IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE PLAZA RESORT AT PALMAS, INC.,<br><br>**Debtor.** | Bankruptcy Case #09-09980 (BKT)<br><br>Adversary No. 11-00249 |
| SCOTIABANK DE PUERTO RICO,<br><br>**Plaintiff,**<br><br>v.<br><br>PERIMETRO PROPERTIES, INC.,<br><br>**Defendant.** | **Civil No.** 12-1457 (FAB) |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

　　Before the Court is defendant Perimetro Properties, Inc.'s ("defendant Perimetro") motion for withdrawal of the reference of Adversary Proceeding 11-00249 from the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court"), pursuant to 28 U.S.C. § 157(d) and Local Bankruptcy Rule 5011-1. (Docket No. 6.)  Having considered defendant Perimetro's motion to withdraw the reference, (Docket No. 6), plaintiff Scotiabank de Puerto Rico's ("plaintiff Scotiabank") opposition, (Docket No. 10), and defendant Perimetro's reply (Docket No. 13), the Court **DENIES** defendant Perimetro's motion for the reasons discussed below.  This

---

[1] Katherine Hedges, a second-year student at the University of New Hampshire School of Law, assisted in the preparation of this Opinion and Order.

Civil No. 12-1457 (FAB)                                                   2

matter is **REFERRED BACK** to the Bankruptcy Court for final disposition.

**I.   BACKGROUND**

   **A.   Procedural History**

On November 18, 2011, plaintiff Scotiabank filed a complaint in the bankruptcy court against defendant Perimetro. Complaint, Scotiabank de Puerto Rico v. Perimetro Properties, Inc. (*In re* The Plaza Resort at Palmas, Inc.), No. 11-149 (Bankr. D.P.R. filed Nov. 18, 2011).[2]  Following a number of motions in the bankruptcy court that are not relevant in the matter before this Court, defendant Perimetro filed a request for withdrawal of the reference on June 8, 2012.  (Bankr. Adv. Proc. 11-249 at Docket No. 30.)  The request for withdrawal of the reference was submitted to this Court on June 12, 2012.  (Docket No. 1.)  On June 19, 2012, defendant Perimetro submitted a motion in support of its request for the withdrawal of the reference.  (Docket No. 6.)  On July 9, 2012, plaintiff Scotiabank opposed the withdrawal of reference (Docket No. 10), and on July 16, 2012, defendant Perimetro replied. (Docket No. 13.)

   **B.   Factual Background**

On November 20, 2011, The Plaza Resort at Palmas, Inc. ("Debtor") filed a bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code ("Chapter 11").  (Bankr. Adv. Proc. 11-249 at

---

   [2] Hereinafter "Bankr. Adv. Proc. 11-249."

Civil No. 12-1457 (FAB)                                                3

Docket No. 1 at p. 2.)  When it filed for bankruptcy, debtor listed all of the timeshare owners as secured creditors in Schedule D. Id.  R-G Premier Bank of Puerto Rico filed a proof of secured claim, which was subsequently transferred to plaintiff Scotiabank. Id.  R-G Premier Bank of Puerto Rico filed an objection to debtor's Schedule D pursuant to Fed.R.Bankr.P. 3003, requesting that the Court order debtor to remove the timeshare owners listed as secured creditors from its Schedule D.  Id. at pp. 2-3.  R-G Premier Bank of Puerto Rico contested the timeshare holders' status as secured creditors.  Id. at p. 2.  Debtor consented to submit the issue as a contested matter in the Bankruptcy Court.  Id.

There are three groups of timeshare holders in this matter: "(a) third party purchasers who acquired their units in the ordinary course of [debtors'] business and filed proofs of claim asserting secured creditor status; (b) third party purchasers who acquired their units in the ordinary course of [debtors'] business," and failed to file proof of secured status of their claim; and (c) defendant "Perimetro, a corporation in common ownership with debtor," which failed to file a proof of claim of secured status, but which debtor asserts is a secured creditor. Id. at p. 4.

On November 3, 2010, plaintiff Scotiabank filed Adversary Proceeding No. 10-175 in the Bankruptcy Court, seeking a declaratory judgment that the category (a) timeshare holders -- the

Civil No. 12-1457 (FAB)                                                    4

specific timeshare owners who had filed secured proofs of claim -- did not possess valid liens. Id. at pp. 3-4. Plaintiff Scotiabank also requested that those shareholders' claims be permitted only as general unsecured claims. Id. at p. 3. The Bankruptcy Court found that a subordination clause in Mortgage Deed No. 9 conferred secured status to the timeshare owners. Id. It entered judgment in favor of the category (a) timeshare owners, ruling that they possess liens superior to plaintiff Scotiabank. Id. Plaintiff Scotiabank appealed this decision; the matter is pending before the First Circuit Court of Appeals. Id. at pp. 3-4.

   Plaintiff Scotiabank holds the first mortgage on debtor's property. Id. at p. 6. The timeshare contracts between debtor and the shareholders are not public deeds and were not recorded in the Registry of Property in Puerto Rico. Id. The "subordination clause" in Mortgage Deed No. 9 indicated that plaintiff Scotiabank would be required to honor the timeshare holders' personal and contractual rights to enjoy the facilities, "provided that they acquired their timeshare rights in the ordinary course" of business. Id. Debtor's principals[3] own defendant corporation Perimetro. Id. Plaintiff Scotiabank alleges that if defendant Perimetro is treated as a secured creditor, debtor's principals will be repaying themselves through the bankruptcy plan. Id. at 7.

---

   [3] These principals are the owners of both The Plaza Resort at Palmas, Inc. and Perimetro. (See Bankr. Case No. 11-249 at Docket No. 1 at p. 4.)

Civil No. 12-1457 (FAB)                                                       5

Therefore, plaintiff Scotiabank contends that category (c) timeshare holders, which consist solely of defendant Perimetro, cannot benefit from the bankruptcy court's previous decision, even if the category (b) timeshare holders benefit from it.  Id. at p. 5.

Plaintiff Scotiabank supports its contention by arguing that defendant Perimetro did not obtain its "timeshare rights in the ordinary course of [D]ebtor's business and may not benefit from the 'subordination clause.'"  Id.  Plaintiff Scotiabank filed this adversary proceeding requesting a declaratory judgment that defendant Perimetro "is not a secured creditor and may not benefit from the 'subordination clause' in [Mortgage] Deed No. 9."  Id. Plaintiff Scotiabank filed its claim pursuant to 11 U.S.C. §§ 101(37), 101(51), 506, 544; Puerto Rico Timeshare and Vacation Club Act, P.R. Laws Ann. tit. 31, §§ 1251, 1251a, 1254(1)(a)(I), 1262, 1262a, 1264a, 1265, 1266; Puerto Rico Mortgage Act, P.R. Laws Ann. tit. 30, §§ 2607, 2256; and Article 1232 of the Civil Code, P.R. Laws Ann. tit. 31, § 3453.  Id. at 7.

**III. DISCUSSION**

With few exceptions, the United States district courts have "original and exclusive jurisdiction of all cases under title 11," the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  Stern v. Marshall, 131 S.Ct. 2594, 2603 (2011) (quoting 28 U.S.C. § 1334(a)).  Pursuant to 28 U.S.C. § 157(b)(1), "[b]ankuruptcy judges may hear and determine

all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section and may enter appropriate orders and judgments, subject to review under section 158 of this title." Matters that are properly before the bankruptcy court may be withdrawn by the district court.  28 U.S.C. § 157(d).  "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on a timely motion of any party, for cause shown." Id.

Permissive withdrawal of the reference is governed by 28 U.S.C. § 157(d), and may occur only "for cause shown." Jimenez-Vidal v. RG Mort. Corp., No. 09-1795, 2010 WL 936143, at *4 (D.P.R. 2010) (quoting In re Corporacion de Servicios Medico Hospitalarios de Fajardo, 227 B.R. 763, 765 (D.P.R. 1998)).  The burden of showing cause for permissive withdrawal of the reference is on the moving party. Alfonseca-Baez v. Doral Fin. Corp., 376 B.R. 70, 74 (D.P.R. 2007); In re Ponce Marine Farm, Inc., 172 B.R. 722, 724 (D.P.R. 1994); see also Martinez v. Scotiabank De Puerto Rico, 484 B.R. 536, 538 (D.P.R. 2012) (citing other district court cases within the first circuit finding that "with respect to core bankruptcy issues there is a presumption that bankruptcy courts should hear the cases that the moving party must overcome").  In the District of Puerto Rico permissive withdrawal of reference is used "as a narrow exception to the general rule that bankruptcy

Civil No. 12-1457 (FAB)                                                    7

proceedings should be adjudicated in the bankruptcy [c]ourt." Ponce Marine Farm, Inc., 172 B.R. at 724.

The District of Puerto Rico has adopted the Fourth Circuit Court of Appeals approach to evaluating whether permissive withdrawal is appropriate. Jimenez-Vidal, 2010 WL 936143, at *4; Alfonseca-Baez, 376 B.R. at 74; Fajardo, 227 B.R. at 765. First, the Court must determine if the issue is a "core" or "non-core" bankruptcy issue. Fajardo, 227 B.R. at 766. 28 U.S.C. § 157 provides a non-exhaustive list of "core" bankruptcy issues, and "core" issues are generally considered to be those that "by its nature, could arise only in the context of a bankruptcy case." Id. After determining whether an issue is "core" or "non-core," courts weigh a variety of factors when determining whether to withdraw a case or not, which include: "uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditor's resources, and expediting bankruptcy process." Alfonseca-Baez, 376 B.R. at 74 (citing Fajardo, 227 B.R. at 765); see also In re Latin American Roller Co., 412 B.R. 15, 23 (Bankr. D.P.R. 2009) (noting that courts have considered these factors in addition to others, such as "whether a jury trial has been requested," when deciding a request for withdrawal of reference).

Withdrawing the reference of "core" bankruptcy issues is disfavored because it is an inefficient use of judicial resources;

Civil No. 12-1457 (FAB)                                                    8

the bankruptcy court is generally more familiar with the issues and facts in those types of cases.  Jimenez-Vidal, 2010 WL 936143, at *5; Alfonseca-Baez, 376 B.R. at 75; Fajardo, 227 B.R. at 765.  The non-exhaustive list of "core" proceedings include "determinations of the validity, extent, or priority of liens" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."  28 U.S.C. §§ 157(k), 157(o).

Defendant Perimetro offers three arguments for why the Court should grant its request for a withdrawal of the reference.  First, it argues that plaintiff Scotiabank's claims are not closely related to bankruptcy and are completely based on Puerto Rico law.  (Docket No. 6 at p. 1.)  Second, it contends that it is entitled to a trial by jury in this Court, which would not be available to it in the bankruptcy court.  (Docket No. 13 at pp. 5-8.)  Third, defendant Perimetro argues that precedent from a recent Supreme Court decision, Stern v. Marshall, requires this Court to withdraw the reference from the bankruptcy court.  (Docket No. 6 at p. 2.)  The Court will address each of these arguments in turn.

    **A.  Defendant Perimetro's Arguments Regarding the Impact of Commonwealth Law**

Defendant Perimetro argues that this Court should withdraw the reference because "this is a priority-of-liens contest between two nondebtors based entirely on Commonwealth law."

Civil No. 12-1457 (FAB)                                             9

(Docket No. 6 at p. 1.)  Plaintiff Scotiabank contends that "this adversary proceeding pertains to a controversy of the sort commonly entertained by the federal courts, and more specifically the bankruptcy courts."  (Docket No. 10 at p. 3.)  The Court finds that the issue in controversy here is a "core" issue.  "[T]he fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core."  In re Arnold Print Works, Inc., 815 F.2d 165, 169 ) (1st Cir. 1987).  Plaintiff Scotiabank cites federal statutes that define lien and security interest, as well as federal statutes that govern determination of secured status and a trustee's ability to void obligations of the debtor.  See 11 U.S.C. §§ 101(37), 101(57), 506, 544.  The Commonwealth law at issue in the adversarial proceeding relate to determining the requirements for lienholder status in a vacation club or timeshare in Puerto Rico. See Puerto Rico Timeshare and Vacation Club Act, P.R. Laws Ann. tit. 31, §§ 1251, 1251a, 1254(1)(a)(I), 1262, 1262a, 1264a, 1265, 1266; Puerto Rico Mortgage Act, P.R. Laws Ann. tit. 30, §§ 2607, 2256; and Article 1232 of the Civil Code, P.R. Laws Ann. tit. 31, § 3453.  Defendant Perimetro itself acknowledges that this is a "priority-of-liens contest," which is clearly one of the "core" issues that Congress intends to be heard by the bankruptcy court. See Docket No. 6 at p. 1; see also 28 U.S.C. § 157(k).

Contrary to defendant Perimetro's argument that the issues are solely dependent on Puerto Rico law, plaintiff Scotiabank's main argument is that defendant Perimetro does not have a secured lien pursuant to federal bankruptcy law. Determination "of the validity, extent, or priority of liens" is specifically one of the issues Congress listed a "core" bankruptcy issue. 28 U.S.C. § 157(k). Even if this case were not based on a lien dispute, determining whether defendant Perimetro is entitled to subordination of plaintiff Scotiabank's claims as a secured creditor would certainly fall within the realm of "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C. § 157(o). Therefore, the Court finds that defendant Perimetro's arguments regarding Commonwealth Law unavailing.

**B.   Defendant Perimetro's Demand for Trial by Jury in U.S. District Court**

Defendant Perimetro further supports its argument for withdrawal of the reference with its demand for a trial by jury in the district court. (Docket No. 13 at pp. 5-8.) Defendant Perimetro has not consented to a jury trial in bankruptcy court, and bankruptcy judges cannot conduct jury trials without the express consent of all parties. 28 U.S.C. § 157(e). The Court must withdraw the reference from the bankruptcy court when the defendant is entitled to a trial by jury and one or more of the

parties have not consented to a jury trial in bankruptcy court. See Local Bankruptcy Rule 9015-1(c); see also de Jesus-Gonzalez v. Segarra-Miranda, 476 B.R. 376, 378 (D.P.R. 2012) (explaining that the right to trial by jury must exist before withdrawing the reference).

No statute provides a right to a jury trial in a district court for lienholder disputes in bankruptcy. See 28 U.S.C. § 157(e) (giving a permissive right to a jury trial in bankruptcy court with both parties' permission). Supreme Court precedent provides a three-part test to determine whether the Seventh Amendment[4] requires a right to trial by jury in this type of bankruptcy case. Braunstein v. McCabe, 571 F.3d 108, 117-18 (1st Cir. 2009). "First the court must 'compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.'" Id. at 118 (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)). Second, and more importantly, the court must determine if the remedy to the action is legal or equitable in nature. Id. "Third, if the first two factors indicate a party has a jury trial right, the court 'must decide whether Congress may assign and has assigned

---

[4] The Seventh Amendment to the United States Constitution provides, in pertinent part, that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

Civil No. 12-1457 (FAB)                                                    12

resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.'" Id.

In the 18th-century, "bankruptcy was essentially a creditor's remedy involving the equitable distribution of the bankrupt's estate." Id. at 118-19.  The trustee's gathering of the property of the estate is equitable in nature.  Id. at 119.  Determining priority of the lien is still equitable even though it is influenced by state law.  See In re Felice, 480 B.R. 401, 420 (D. Mass. 2012) (finding that a trustee's request for declaratory judgment that turned on Massachusetts state law was a matter in equity properly before the Bankruptcy Court).  Because the first two prongs of the test weigh in favor of no right to a jury trial, the Court declines to address the third.  Braunstein, 571 F.3d at 119.  Thus, the Court is not required to withdraw the reference in order to provide a jury trial for defendant Perimetro.

**C.   Defendant Perimetro's Arguments Regarding Stern v. Marshall**

Defendant Perimetro further argues that a recent Supreme Court decision, Stern v. Marshall, requires this Court to withdraw the reference from the bankruptcy court because there is an unanswered question of state law.  (Docket No. 6 at p. 2; Docket No. 13 at pp. 4-5.)  In Stern, the Court held that a bankruptcy court did not have jurisdiction to hear a counterclaim of tortious interference with an *inter vivos* gift that was brought after the debtor was sued for defamation in the bankruptcy court.  131 S.Ct.

Civil No. 12-1457 (FAB)                                                  13

at 2608.  In that case, the State of Texas had not yet determined whether or not it would recognize this type of cause of action. Id. at 2610.  The issues in this case do not require deciding whether a new cause of action exists.  Rather, the issues require interpreting the impact of Commonwealth statutes on existing bankruptcy regulations dealing with liens.

The Stern Court also stated that its ruling was very narrow.  It held that bankruptcy courts do not have "constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."  Id. at 2620.  The Court was concerned that allowing bankruptcy courts to decide that the counterclaim existed would result in Congress taking authority from the Judicial Branch (via the Bankruptcy Act of 1984).  Id.  Unlike in Stern, where the cause of action for tortious interference could, and did, survive on its own outside of the bankruptcy process, the determination of priority of liens in this case is integral to the bankruptcy process.  See Stern, 131 S.Ct. at 2617.  Also unlike Stern, deciding this case will not result in the bankruptcy court determining issues that are related to, but not essential to, resolving the bankruptcy.  Thus, the Stern decision does not impact the Court's decision on this withdrawal of reference.

Civil No. 12-1457 (FAB)                                                14

### D.   Other Factors

Finally, after determining that this "core" bankruptcy issue does not carry a right to trial by jury, the Court will weigh whether, based on other factors, it is appropriate to withdraw the reference from the bankruptcy court.  Uniformity in bankruptcy administration weighs in favor of denying the withdrawal of the reference because the bankruptcy court is much more familiar with the process of determining lienholder priority.  See Alfonseca-Baez, 376 B.R. at 75.  Reducing forum shopping and reducing confusion also weigh in favor of denying the withdrawal of reference because withdrawing a case that is so intertwined with the bankruptcy would make it easier for parties to attempt to obtain a different outcome by appearing before a court with less familiarity with bankruptcy issues.  See id.  Fostering the economical use of the debtor's and creditor's resources and expediting the bankruptcy process also weigh in favor of denying the withdrawal of the reference because this case will be adjudicated more expediently as a whole before the bankruptcy court.  See id.  Accordingly, the Court **DENIES** the withdrawal of reference from the Bankruptcy Court.

### IV.  CONCLUSION

For the reasons expressed above, the Court **DENIES** defendant Perimetro's motion for withdrawal of the reference.  Accordingly,

Civil No. 12-1457 (FAB)                                                          15
_____

this matter will be **REFERRED BACK** to the Bankruptcy Court for further proceedings.

    Judgment shall be entered accordingly.

    **IT IS SO ORDERED.**

    San Juan, Puerto Rico, March 5, 2013.

                                         <u>s/ Francisco A. Besosa</u>
                                         FRANCISCO A. BESOSA
                                         UNITED STATES DISTRICT JUDGE